```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
```

FLOYD A. WILLIAMS,              )
     Plaintiff,                 )
                                )
          v.                    )    C.A. No. 10-11866-MLW
                                )
LITTON LOAN SERVICING,          )
POPULAR MORTGAGE SERVICING, INC., )
and EQUITY ONE,                 )
     Defendants.                )

<u>MEMORANDUM AND ORDER</u>

WOLF, D.J.                                     August 15, 2011

I.  INTRODUCTION

On October 5, 2010, plaintiff Floyd Williams ("Williams") filed a five-count complaint in Suffolk Superior Court against defendants Litton Loan Servicing ("Litton"), Popular Mortgage Servicing, Inc. ("Popular"), and Equity One. On November 1, 2010, Litton timely removed this case pursuant to 28 U.S.C. §§1441 and 1446. Neither Popular nor Equity One has been served by Williams. Litton now is moving to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons described below, Litton's motion to dismiss is being allowed concerning Williams's federal claims and denied without prejudice concerning Williams's state law claims, which are being remanded.

II.  THE MOTION TO DISMISS

   A.  <u>Legal Standard</u>

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "take all factual allegations as true and . . . draw all <u>reasonable</u> inferences in favor of the

plaintiff." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007); see also Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009). A motion to dismiss should be denied if a plaintiff has shown "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007).

A complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This pleading standard does not require "detailed factual allegations," but does require "more than labels and conclusions . . . and a formulaic recitation of the elements of a cause of action will not do . . . ." Twombly, 550 U.S. at 555; see also Ashcroft v. Iqbal, 129 S.Ct. 1937, 1953 (2009) (holding Twombly standard to apply to all civil actions). A court may disregard "bald assertions, unsupportable conclusions, and opprobrious epithets." In re Citigroup, Inc., 535 F.3d 45, 52 (1st Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id.

(quoting Twombly, 550 U.S. at 557).

   B.   Discussion

   In considering Litton's motion to dismiss, the court takes as true all factual allegations in the complaint and draws all reasonable inferences in Williams's favor. See Rodriguez-Ortiz, 490 F.3d at 96.

   On September 23, 2003, Equity One issued to Williams a $433,500 loan secured by a mortgage on property located at 490 Columbia Road, Dorchester, Massachusetts. The mortgage agreement included a clause entitling Equity One to collect payments for property taxes from Williams. If Equity One waived its right to do so, Williams was responsible for paying any such taxes directly. If Williams failed to make timely payments, Equity One could make the payments and recover from Williams.

   Equity One waived its right to collect tax payments from Williams, and Williams began making those payments directly to the City of Boston. However, on November 4, 2004, Equity One learned from the City of Boston that Williams had defaulted on his tax payments. Equity One paid the balance and charged Williams for the amount paid, interest, servicing costs, and late fees. A portion of Williams's subsequent mortgage payments was applied by Equity One to those charges. However, Williams also renewed his tax payments, causing the City of Boston to be overpaid.

   Williams never pursued a refund from the City of Boston but,

in December, 2005, brought the property tax overpayment to the attention of Popular, the original servicer of his loan. Popular took no action and, in October, 2008, transferred Williams's loan to Litton. On November 25, 2008, Litton mailed Williams a "Validation of Debt Notice" stating that Williams owed $429,557.72. The chronology laid out in the complaint and accompanying documents is unclear, but it appears that Williams mailed Litton a dispute letter on November 25, 2008, and then again on January 6, 2009. (The dates of those letters also may have been December 2, 2008, and December 9, 2008.) Litton acknowledged receipt of at least one of those letters but, on either December 22, 2008, or January 21, 2009, mailed Williams a "Notice of Default and Intent to Accelerate." That notice informed Williams that his loan would be accelerated unless he paid $18,000 by March 9, 2009; in Williams's view, the notice "end[ed] negotiations." Compl. at 2.

On February 20, 2009, Williams notified Litton that he intended to file a complaint. On February 23, 2009, Williams received a telephone call from Litton requesting that he postpone filing a complaint until Litton had an opportunity to resolve the disputed charges. On December 16, 2009, Litton notified Williams by letter that the disputed charges would not be removed from his account and that his escrow balance of $18,591.84 was due.

Williams has asserted two federal claims and three state law claims against Litton. The federal claims allege violations of the

4

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692 et seq., and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§2601 et seq. The state law claims allege breach of contract, breach of implied covenant of good faith and fair dealing, and violation of Chapter 93A. Both of Williams's federal claims are being dismissed. Accordingly, Williams's three state law claims are being remanded for lack of jurisdiction.

1. The FDCPA Claim

Williams's FDCPA claim is time barred. Pursuant to the FDCPA, if a consumer notifies a debt collector in writing that a debt is disputed, the debt collector must cease collection of the debt until verification of the debt is mailed to the consumer. See 15 U.S.C. §1692g(b). Any action to enforce a debt collector's liability for violating the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. §1692k(d); see also Harrington v. CACV of Colorado, LLC, 508 F. Supp. 2d 128, 131-32 (D. Mass. 2007).

Williams alleges that Litton violated the FDCPA by failing to cease collection after receiving his letters disputing his debt. As noted above, those letters were mailed either November 25, 2008, and January 6, 2009, or December 2, 2008, and December 9, 2008. On either December 22, 2008, or January 21, 2009, Litton mailed Williams a "Notice of Default and Intent to Accelerate," informing him that his loan would be accelerated unless he paid $18,000. Even

5

assuming that this notice constituted a violation of the FDCPA, Williams had until January 21, 2010, at the latest, to file this action. Because he delayed until October 5, 2010, his FDCPA claim is time-barred. Accordingly, it must be dismissed. See Oyegbola v. Advantage Assets, Inc., No. 09-cv-10418-NG, 2009 WL 4738074, at *4 (D. Mass. Dec. 7, 2009) (dismissing FDCPA claim as barred by statute of limitations); Crooker v. Wachovia Bank, N.A., No. 08-10227-RGS, 2008 WL 2066943, at *1 (D. Mass. May 14, 2008) (same).

That Williams postponed filing suit upon Litton's request does not alter this conclusion. The circumstances in which equitable tolling of a statute of limitations are appropriate are extremely limited. See Wallace v. Kato, 549 U.S. 384, 396 (2007) ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs."); Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) ("Federal courts have typically extended equitable relief only sparingly."); Neves v. Holder, 613 F.3d 30, 36 (1st Cir. 2010). "[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). The general rule is that a showing of fraud or affirmative misrepresentation is required. See Irwin, 498 U.S. at 96; Gonzalez v. United States, 284 F.3d 281, 292 (1st Cir. 2002); Jensen v. Frank, 912 F.2d 517, 521 (1st Cir. 1990)

6

(requiring "active misleading"); Oyegbola, 2009 WL 4738074, at *3 (requiring plaintiff to show "(1) that defendants deliberately concealed material facts related to the alleged deceptive conduct; and (2) that [plaintiff] exercised due diligence in attempting to uncover the fraud"); Jonker v. Kelly, 268 F. Supp. 2d 81, 86 (D. Mass. 2003). This rule is no different in FDCPA cases. See, e.g., Michaels v. NCO Fin. Sys., Inc., No. 10-207 Erie, 2011 WL 2600723, at *2 (W.D. Pa. June 29, 2011) (requiring active misleading by artifice); Byrd v. Law Offices of John D. Clunk, Co., No. 1:09-cv-076, 2010 WL 816932, at *4 (S.D. Ohio Mar. 8, 2010) (requiring a showing of fraudulent misrepresentation or concealment).

Here, Williams cannot show either that he pursued his FDCPA claim diligently or that Litton engaged in fraudulent misrepresentation. As described above, Williams's claim accrued, at the latest, on January 21, 2009. On February 23, 2009, Litton requested that he postpone filing a complaint until Litton had an opportunity to resolve the disputed charges; Williams was under no obligation to acquiesce to Litton's request. On December 16, 2009, Litton notified Williams that the disputed charges would not be removed from his account. At that time, Williams still had over one month to file an FDCPA claim within the statute of limitations. He elected not to do so and, indeed, waited nearly nine months before eventually filing a complaint on October 5, 2010. He offers no explanation for this delay. In addition, there is no allegation

7

that Williams was tricked or pressured into allowing the filing deadline to pass or that Litton affirmatively misrepresented either its intentions or Williams's legal rights. These circumstances - in which Williams was on notice of Litton's alleged FDCPA violation during the statutory limitations period and voluntarily elected to defer pursuing his claim - do not warrant exercising the exceptional remedy of equitable tolling.

### 2. The RESPA Claim

Williams's RESPA claim is not actionable. Pursuant to the RESPA, a mortgage loan servicer has 20 days to acknowledge receipt of a borrower's qualified written request ("QWR") for information relating to the servicing of the loan, and 60 days to either make appropriate corrections to the borrower's account or provide a written explanation why the servicer believes the account is correct. See 12 U.S.C. §2605(e); McLean v. GMAC Mortg. Corp., 398 F. App'x 467, 471 (11th Cir. 2010). If the servicer fails to comply with either provision, a borrower may recover any "actual damages" caused by that failure. 12 U.S.C. §2605(f); McLean, 398 F. App'x at 471. Thus, "[t]o state a claim under RESPA, many courts have read § 2605 to require a showing of pecuniary damages." Durland v. Fieldstone Mortg. Co., No. 10 CV 125 JLS (CAB), 2010 WL 3489324, at *3 (S.D. Cal. Sept. 3, 2010). Without such a showing, a RESPA claim is not actionable. See Claxton v. Orlans Assocs., P.C., No. 10-11813, 2010 WL 3385530, at *5 (E.D. Mich. Aug. 26, 2010)

("[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages.").

Williams alleges that Litton violated the RESPA by failing to properly respond to his QWR, by which the court assumes Williams means his December 9, 2008 letter. Williams does not, however, allege that Litton's failure to respond resulted in any actual damages. That allegation is entirely absent from the complaint, as are any facts tending to support it. Accordingly, Williams's RESPA claim must be dismissed. See Durland, 2010 WL 3489324, at *4 (dismissing RESPA claim where "Plaintiff fail[ed] to allege specific facts sufficient to support how Defendant Litton's alleged failure to respond to Plaintiff's QWRs resulted in pecuniary damages"); Claxton, 2010 WL 3385530, at *5 (dismissing RESPA claim where complaint did not allege plaintiff incurred any actual damages as a result of defendant's alleged failure to timely or adequately respond to QWR); Lal v. American Home Servicing, Inc., 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) (same).

III. JURISDICTION

Because Williams's complaint asserts claims under two federal statutes, federal question jurisdiction existed over those claims pursuant to 28 U.S.C. §1331 at the time of removal, and supplemental jurisdiction existed over Williams's state law claims pursuant to 28 U.S.C. §1367(a). See Rhode Island Fishermen's

9

Alliance, Inc. v. Rhode Island Dep't of Envtl. Mgmt., 585 F.3d 42, 48 (1st Cir. 2009). However, as Williams's federal claims are being dismissed "at an early stage of the litigation," before any discovery has commenced, it is now appropriate to either remand or dismiss without prejudice Williams's state law claims unless, as Litton contends, diversity jurisdiction exists over them. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351-53, 357 (1988); 28 U.S.C. §1367(c)(3).

Diversity jurisdiction exists if a case involves an amount in controversy greater than $75,000 and pits citizens of different states against one another. See 28 U.S.C. §1332(a). In a case, such as this one, which has been removed from state court, it is the removing defendant's burden to prove that the requirements of 28 U.S.C. §1332(a) are met. See Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999). Diversity of citizenship must be proved by a preponderance of the evidence. See Francis v. Goodman, 81 F.3d 5, 6 (1st Cir. 1996). So must the amount in controversy where it is not clearly specified in the complaint. See Bell v. Hershey Co., 557 F.3d 953, 956 (8th Cir. 2009); In re 1994 Exxon Chemical Fire, 558 F.3d 378, 387 (5th Cir. 2009); Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 998 (9th Cir. 2007); Smith v. Nationwide Prop. & Cas. Ins. Co., 505 F.3d 401, 404-05 (6th Cir. 2007); Miedema v. Maytag Corp., 450 F.3d 1322, 1330 (11th Cir. 2006); Martin v. Franklin Capital Corp., 251 F.3d 1284, 1290 (10th

Cir. 2001); Gilman v. BHC Sec., Inc., 104 F.3d 1418, 1421 (2d Cir. 1997); Lowe v. Sears Holding Corp., 545 F. Supp. 2d 195, 196 (D.N.H. 2008); Doughty v. Hyster New England, Inc., 344 F. Supp. 2d 217, 219 (D. Me. 2004).

    A.    Diversity of Citizenship

In this case, Litton has not proved diversity of citizenship by a preponderance of the evidence. It is undisputed that Williams is a citizen of Massachusetts, see Compl. ¶1, but Litton has offered no proof of either its own citizenship or the citizenship of Popular or Equity One. Indeed, in its answer to Williams's complaint, Litton denies the allegation that its usual place of business is in Utah, notwithstanding that, in its notice of removal, Litton relies upon that allegation as a basis for diversity jurisdiction. In light of this apparent contradiction and Litton's failure to affirmatively establish the citizenship of the parties, the court cannot conclude that Litton has met its burden.

    B.    Amount in Controversy

Litton also has not proved by a preponderance of the evidence that the amount in controversy exceeds $75,000. In calculating the amount in controversy, a federal court must examine relevant state law in determining the nature and extent of the damages which may be awarded. See Stewart v. Tupperware Corp., 356 F.3d 335, 339 (1st Cir. 2004); Evans v. Yum Brands, Inc., 326 F. Supp. 2d 214, 220-21 (D.N.H. 2004). For example, "[w]hen a plaintiff makes a claim under

a statute including a damage multiplier, a court must apply that factor in evaluating the amount in controversy." Evans, 326 F. Supp. 2d at 222. In addition, a court must take into account attorneys' fees when the award of those fees is statutorily authorized. See Spielman v. Genzyme Corp., 251 F.3d 1, 6 (1st Cir. 2001). Accordingly, the court's determination of the amount in controversy in this case must account for Litton's alleged violation of Chapter 93A, which authorizes both treble damages and attorneys' fees for successful litigants. See Mass. Gen. Laws. ch. 93A, § 9.

Citing Williams's civil action cover sheet, which estimates the value of Williams's claims at $70,000, Litton contends that over $75,000 is in controversy in this case, after accounting for trebling and attorneys' fees. However, Williams's complaint and subsequent filings appear to cabin his damages to the disputed $18,000 tax overpayment and associated charges. Although civil action cover sheets may be considered in determining the amount in controversy, see, e.g., Salvail v. Relocation Advisors, Inc., C.A. No. 11-10500-RGS, 2011 WL 1883861, at *1 n.1 (D. Mass. May 17, 2011), the court is aware of no authority for basing an amount in controversy determination solely on a civil action cover sheet when it is contradicted, albeit implicitly, by the complaint itself. Indeed, other courts have held that "reliance solely on the Civil Cover Sheet as a demonstration of the amount in controversy is not

12

permissible." Baker v. Sears Holding Corp., 557 F. Supp. 2d 1208, 1215 (D. Colo. 2007); see also Morse v. Am. Sec. Ins. Co., No. H-10-4606, 2011 WL 332544, at *2 (S.D. Tex. Jan. 28, 2011). As these courts have recognized, a cover sheet is "simply too imprecise to make the requisite demonstration of the amount in controversy for purposes of diversity jurisdiction." Magdaleno v. L.B. Foster Co., No. 06-cv-01882-MSK-CBS, 2008 WL 496314, at *6 (D. Colo. Feb. 19, 2008). Indeed, in this case, the $70,000 estimated on Williams's civil action cover sheet could well represent the sum of his $18,000 overpayment after trebling and reasonable attorneys' fees. Litton has offered no evidence to the contrary and, accordingly, has not met its burden of proving by a preponderance of the evidence that the amount in controversy requirement of 28 U.S.C. §1332(a) is satisfied.

    C.    Conclusion

Because federal question jurisdiction no longer exists in this case and Litton has not met its burden of showing the existence of diversity jurisdiction, Williams's state law claims are being remanded. See Carnegie-Mellon, 484 U.S. at 357.

IV. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Litton's Motion to Dismiss (Docket No. 4) is ALLOWED to the extent that Counts IV and V are dismissed. It is DENIED without prejudice in all other respects.

13

2. This case is REMANDED to Suffolk Superior Court.


                                    /s/ Mark L. Wolf
                              UNITED STATES DISTRICT JUDGE